### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

JOHN M. SEMBER,              :          Case No. 3:16-cv-445
                             :
          Plaintiff,         :          Judge Thomas M. Rose
                             :
v.                           :
                             :
BOOZ ALLEN HAMILTON          :
ENGINEERING SERVICES, LLC,   :
ET AL.,                      :
                             :
          Defendants.        :
_____

### ENTRY AND ORDER DENYING PLAINTIFF'S AMENDED MOTION
### FOR REMAND TO STATE COURT (DOC. 10)
_____

This case is before the Court on Plaintiff John M. Sember's Amended Motion for Remand to State Court ("Amended Motion for Remand") (Doc. 10). Defendants removed this case from the Common Pleas Court for Montgomery County, Ohio pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446. Sember initially moved to remand the case based on the insufficiency of Defendants' Notice of Removal. In response, Defendants filed an Amended Notice of Removal, which prompted Sember to file the Amended Motion for Remand (now before the Court) and seek leave to file an Amended Complaint. Defendants opposed the Amended Motion for Remand and the Court subsequently granted Sember leave to file the Amended Complaint. (Docs. 12, 13.) For the reasons below, despite the revisions to the Complaint, the Court has jurisdiction over this case. The Amended Motion for Remand is therefore **DENIED**.

### I.      BACKGROUND

Sember is a former employee of Defendant Booz Allen Hamilton Engineering Services, LLC ("BAHES"). (Doc. 14 at ¶ 1.) BAHES is "a leading provider of management consulting,

technology, and engineering services to the United States government in defense, intelligence, and civil markets, and to major corporations, institutions and not-for-profit organizations." (*Id.* at ¶ 2.) BAHES is a subsidiary of Booz Allen Hamilton, Inc. ("BAH"). (*Id.* at ¶ 2.)

On January 14, 2013, Sember began working for BAHES. (*Id.* at ¶ 7.) Before joining BAHES, Sember was a Captain in the United States Air Force and worked as an electrical engineer at the Center for Rapid Product Development ("CRPD") in Dayton, Ohio. (*Id.* at ¶ 9.) Sember's position at BAHES required him to perform "the same functions, at the same location, for BAHES that he had performed while in the active military." (*Id.* at ¶ 10.)

Sember alleges that his "on-boarding process with BAHES did not involve training on how to handle the data he would create for the government customer." (*Id.* at ¶ 13.) Sember's direct supervisor at BAHES allegedly was not aware of Sember's duties, including whether or not Sember handled government data. (*Id.* at ¶ 19.) Sember claims that the only training that he was provided at BAHES "as to the change in cultures between the military and private industry, responsibilities and duties owed to BAHES, now that he was no longer active duty military, was the annual 'Green Book' training." (*Id.* at ¶ 21.) The Green Book is the "common code of business ethics and compliance" for all BAH employees. (*Id.* at ¶ 20.)

On Friday, March 14, 2014, Sember gave notice to his onsite BAHES manager that he intended to resign effective April 18, 2014. (*Id.* at ¶ 23.) Unbeknownst to Sember, however, CRPD management had determined that Sember's employment would be terminated effective March 14, 2014—the same day that he provided notice. (*Id.* at ¶ 24.) On the following Monday, Sember was told that the government customer no longer needed his services and that he would be provided with a "lack of work" letter. (*Id.* at ¶ 27.)

On March 17, 2014, Sember "copied and transferred to a personally-owned hard drive, the

data that had accumulated during his employment at CRPD."  (*Id.* at ¶ 28.)  Sember alleges that he did so to protect the data, as required by the Green Book.  (*Id.*)  The same evening, Sember returned certain "computer components" to BAHES.  (*Id*. at ¶ 32.)

Sember was unsure about what to do with the data that he retained from his work at CRPD. (*Id.* at ¶ 35.)  As a result, on or about March 24, 2014, he hired an attorney to help him think through this issue.  (*Id.*)  Sember alleges that BAHES/BAH employees were required "to exercise care and comply with contract and legal requirements to safeguard sensitive, proprietary or non-public information obtained from BAHES/BAH clients and third parties."  (*Id.* at 36.) However, BAHES did not provide Sember any training on these "contract and legal requirements."  (*Id.* at ¶¶ 36-37.)

Sember alleges that, after his termination, BAHES representatives informed the FBI that Sember had access to a classified "asset" while at CRPD and that government property was stored on his computer.  (*Id.* at ¶ 45.)  Sember contends that, to the contrary, he did not have access to any classified materials because the CRPD was not designated a classified facility.  (*Id.*)  In addition, he did not have any government property because, under the Green Book, BAHES retained ownership of all work product created by its employees.  (*Id*. at ¶ 41.)

On March 27, 2014, Sember was scheduled to participate in a teleconference with BAHES's human resource and legal departments.  (*Id.* at ¶ 46.)  Sember's attorney dialed into the teleconference, but was notified that Sember had to participate without counsel.  (*Id.*) Sember declined to participate and then wrote a resignation letter moving the effective date of his resignation to March 28, 2014.  (*Id.* at ¶¶ 47-48.)

On March 28, 2014, eleven federal agents, with the assistance of Fairborn police officers, battered down Sember's front door in search of the data that he had retained from his work at

CRPD. (*Id.* at ¶ 50.) Sember was driven to the Fairborn Police Department, where he was interviewed and released. (*Id.* at ¶ 51.)

On September 25, 2014, a federal grand jury indicted Sember for theft of government property. (*Id.* at ¶ 52.) Sember pled not guilty to the indictment. (*Id.* at ¶ 53.) The case proceeded to trial and, on April 7, 2016, a jury returned a verdict of not guilty. *United States of America v. John M. Sember*, Case No. 3:14-cr-141, Doc. 137.

Sember alleges that he should never have been indicted because the property that he allegedly stole did not belong to the government. He alleges that, had BAHES/BAH provided him the proper training, the materials that he retained would have been properly labeled and it would have been obvious that the government did not own them. (Doc. 14 at ¶ 56.)

The Amended Complaint contains a single cause of action for breach of contract. Sember alleges that BAHES/BAH failed to provide the training that they were required to provide Sember under his employment agreement and the Green Book. (*Id.* at ¶ 77.) Sember alleges that, as a result of his indictment, he was suspended from government contracting and receiving the benefits of federal assistance programs. (*Id.* at ¶ 57.) In addition, the University of Dayton allegedly declined to renew Sember's contract as a graduate student assistant. (*Id.* at ¶ 58.) Sember further alleges that he spent over $50,000 on his defense in the criminal case and suffered embarrassment, mental anguish and other damages. (*Id.* at ¶ 64.)

## II.   ANALYSIS

Section 1442(a)(1), sometimes referred to as the federal officer removal statute, permits removal where the defendant is "[t]he United States or any agency thereof or any officer (or person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1). To

4

remove an action under this statute, a defendant must establish: (1) it is a "person" within the meaning of the statute; (2) it has a colorable federal defense; (3) it acted under the direction of a federal agency or officer; and (4) there is a causal nexus between the claims and the conduct performed under the color of federal office. *Ferguson v. Lorillard Tobacco Co.*, 475 F. Supp. 2d 725, 729 (N.D. Ohio 2007). The Supreme Court has emphasized that "the federal officer removal statute is not 'narrow' or 'limited.'" *Willingham v. Morgan*, 395 U.S. 402, 406 (1969).

At the pleadings stage, the Court considers only whether the complaint "invokes a colorable federal defense, not whether the defense will succeed." *Id.* at 731. This permits the merits of the defense to be tried in federal court. *Kentucky v. Long*, 837 F.2d 727, 751 (6th Cir.1988) ("One of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.").

As discussed below, Defendants have met each of the four requirements for removal of this action under 28 U.S.C. § 1442(a)(1).

### A. Whether Defendants, or Any One of Them, Is a "Person" Under the Statute

Defendants BAH and BAHES, which are corporate entities, and Defendants Karen Paulsen, John Hancock and Darren Geary are persons under § 1442(a)(1). *Ferguson*, 475 F. Supp. 2d at 729 (citing *Thompson v. Community Ins. Co.*, 1999 U.S. Dist. LEXIS 21725, *9-11 (S.D. Ohio) ("the overwhelming weight of recent judicial authority supports the view that corporations qualify as 'persons' under the federal officer statute")). Sember does not dispute that this requirement is met.

### B. Whether Defendants Have a Colorable Federal Defense

Defendants argue that, as federal defense contractors, they are entitled to absolute immunity for the conduct alleged in the Amended Complaint. (Doc. 12 at 3-4 (citing *Becker v.*

5

*Philco*, 372 F.2d 771, 774 (4th Cir. 1967); *Montgomery v. Sanders*, No. 3:07-CV-470, 2008 WL 454626, at *3-4 (S.D. Ohio Aug. 18, 2008)). Sember argues that Defendants failed to assert—at least in their notices of removal—any federal defense to the lone breach-of-contract claim remaining in the Amended Complaint. (Doc. 10 at 1-2.)

Although Sember is correct that Defendants did not assert a federal defense to the breach-of-contract claim in their notices of removal, they did assert one in response to Sember's Amended Motion to Remand. In fact, Defendants assert the same federal defense that they asserted in response to Complaint's second through fifth causes of action (which are no longer alleged in the Amended Complaint). Defendants filed their Notice of Removal and Amended Notice of Removal before Sember sought leave to file the Amended Complaint. They therefore did not know that the assertion of a federal defense in response to the breach-of-contract claim would be required for jurisdictional purposes. *Stephenson v. Nassif*, 160 F. Supp. 3d 884, 887 (E.D. Va. 2015) ("Importantly, by its plain language § 1442(a)(1) provides for the removal of an entire 'civil action,' so removal is not limited only to specific qualifying claims.") (citing 14C Wright & Miller, Federal Practice and Procedure § 3726 at 275 (2009) ("Because Section 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency, the section creates a species of statutorily-mandated supplemental subject-matter jurisdiction.")). It would be unfair to consider only the federal defenses that Defendants asserted in response to the Complaint, when the Court has permitted Sember to proceed on his Amended Complaint. The Court therefore finds that Defendants have sufficiently raised a federal defense to the breach-of-contract claim.

The next question is whether the asserted federal defense is colorable. Defendants compare this case to *Becker v. Philco*, 372 F.2d 771 (4th Cir. 1967). In that case, the Fourth

6

Circuit Court of Appeals held that a federal contractor was immune from suit by employees claiming to have been defamed in security reports submitted to the government in accordance with the requirements of the Department of Defense ("DoD") Industrial Security Manual for safeguarding classified information and Security Agreement. *Becker*, 372 F.2d at 776. Under the Security Agreement, the contractor was obligated to report "not only . . . actual but . . . each suspected compromise of classified information" to the government. *Id*. at 773-74. The contractor did not have any discretion in its performance of this obligation and was "mandatorily ordered to report the suspicion immediately." *Id.* Under these circumstances, the Fourth Circuit held that the contractor was entitled to the immunity conferred upon a federal officer or agency in the exercise of their federal duties under well-established Supreme Court precedent. *Id.* at 774 (citing *Barr v. Matteo*, 360 U.S. 564 (1959); *Howard v. Lyons*, 360 U.S. 593 (1959)).

Defendants also rely on *Montgomery v. Sanders*, No. 3:07-CV-470, 2008 WL 4546262 (S.D. Ohio Aug. 18, 2008), in which this Court granted a motion to dismiss a defamation claim against a federal defense contractor. The plaintiff, who had been employed by the contractor, was suspended and ultimately terminated on the basis of reports made by one of the contractor's security officers to the DoD and other government entities. Plaintiff also lost his security clearance, which caused a business that he co-owned to lose a government contract. Citing the *Becker* case, among others, the Court noted that contractors have absolute immunity from defamation claims based on security reports they make to federal agencies. 2008 WL 4546262 at *3. Since the plaintiff's defamation claim was based on allegations that the security reports contained false information, it was dismissed. *Id.*

Here, Sember does not assert a defamation claim, but there is a link between his breach-of-contract claim and the information that Defendants allegedly reported to the

7

government.   Sember alleges that Defendant Karen Paulsen, a BAHES employee, falsely reported to the FBI that "Sember had access to a classified 'asset' at the CRPD" and that "the contents of computer components Sember worked on were government property."   (Doc. 14 at ¶ 45.)   Based in part on that information, the FBI obtained and executed a warrant to search Sember's residence. During that search, the FBI recovered the data and materials that became the subject of Sember's criminal prosecution for theft of government property.   Sember alleges that, had he been provided the training that BAH/BAHES was contractually obligated to provide, the data and materials would have been accurately identified as not belonging to the United States and no prosecution would have followed.   Sember alleges that "[d]efending against the criminal case cost Sember in excess of $50,000.00, the loss of employment with the University of Dayton, embarrassment, mental anguish and other damages."   (*Id.* at ¶ 64.)   Sember does not appear to allege any damages that are not causally linked to Defendants' reporting of information to federal officers.

Defendants assert that, like the federal contractors in *Becker* and *Montgomery*, they were obligated to report to the government any security issue involving their employees.   Defendants cite the DoD National Industrial Security Program Operating Manual ("NISPOM"), which mandates that "[c]ontractors shall report adverse information coming to their attention concerning any of their cleared employees."   DoD 5220.22-M at § 1-302(a), available at http://www.dss.mil/documents/odaa/ nispom2006-5220.pdf.   Sember has not challenged Defendants' obligation to comply with this requirement or NISPOM generally.

Although Sember has not alleged a defamation claim, there is a close connection between his breach-of-contract claim and Defendants' reporting requirements as federal defense contractors.   The connection is so close that the same policy reasons supporting federal contractor immunity in *Becker* and *Montgomery* would appear to apply here. The Court need not decide that

8

issue now; it is enough that Defendants have asserted a colorable federal defense.

**C. Whether Defendants Acted under the Direction of a Federal Agency or Officer**

Defendants were acting under the direction of a "federal officer" because they were required by law to report Sember's conduct to the DoD under NISPOM § 1-302(a).

**D. Whether There Is a Causal Nexus Between the Claims and Conduct**

There is a causal nexus between Sember's breach-of-contract claim and Defendants' reporting obligations under NISPOM § 1-302(a). Sember alleges damages that stem from Defendants' alleged reporting that he retained certain property from his work on a government contract. Sember alleges that Defendants' characterization of the property was inaccurate and, but for Defendants' failure to train him properly, Defendants' error would have been quickly recognized and his prosecution for theft of government property averted.

## III.  <u>CONCLUSION</u>

Defendants have asserted a colorable federal defense and met the requirements for removal under 28 U.S.C. § 1442(a)(1). The Court therefore **DENIES** Plaintiff's Amended Motion to Remand.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, March 15, 2017.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE