UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JOHN M. SEMBER, | : | Case No. 3:16-cv-445 |
| | : | |
| Plaintiff, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | |
| BOOZ ALLEN HAMILTON | : | |
| ENGINEERING SERVICES, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (DOC. 16) THE AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) AND TERMINATING CASE**

---

This case is before the Court on the Motion to Dismiss (Doc. 16) pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Booz Allen Hamilton Engineering Services, LLC ("BAHES"), Booz Allen Hamilton, Inc. ("BAH"), and BAHES employee John Hancock ("Hancock") (collectively "Defendants"). Plaintiff John Sember ("Sember"), a former BAHES employee, alleges that Defendants breached a duty to train him how to properly handle, label and protect the data he created while employed by BAHES. (Doc. 14 at ¶ 66.) Sember alleges that, due to this lack of training, he was prosecuted for alleged theft of government property—although he was ultimately acquitted at trial.

Defendants move to dismiss the Amended Complaint on two grounds: that Ohio law does not recognize a claim for breach of a duty to train and derivative governmental immunity. Defendants' Motion to Dismiss is fully briefed and ripe for

review. (Docs. 16, 18, 19.) As discussed below, because Defendants are entitled to immunity from the sole claim alleged in the Amended Complaint, the Court **GRANTS** the Motion to Dismiss.[1]

I. <u>**BACKGROUND**</u>

As alleged in the Amended Complaint, Sember began employment with BAHES in January 2013. (Doc. 14 at ¶ 7.) Prior to joining BAHES, Sember served in the United States Air Force as an electrical engineer at the Center for Rapid Product Development ("CRPD"). (*Id.* at ¶ 10.) Sember's employment with BAHES required him to perform the same responsibilities at the same location as was required of him when he served in the Air Force. (*Id.* at ¶ 10.) BAHES is a wholly owned subsidiary of BAH, both of which operate as government contractors. (*Id.* at ¶ 7-8.)

On March 14, 2014, Sember notified BAHES that he intended to resign effective April 18, 2014. (*Id.* at ¶ 23.) On March 16, 2014, Hancock, who was one of Sember's supervisors, instructed Sember to report the next morning to an address different from his usual duty station. (*Id.* at ¶ 26.) When Sember reported as directed, he was informed that he was not fired, but BAHES no longer had work for him. (*Id.* ¶ 26-27.) Later that same evening, Sember copied and transferred information he collected while working at the CRPD to his personal hard-drive. (*Id.* at ¶ 28.) Sember returned some computer components to a BAHES representative, but retained the data that he had copied. (*Id.* at ¶ 33.)

---

[1] The Court acknowledges the valuable contribution and assistance of judicial extern Anthony Satariano in drafting this opinion.

On March 25, 2014, the FBI interviewed several BAHES employees in connection with a report that Sember had stolen government property. (*Id.* at ¶ 44.) During this interview, a BAHES employee informed the FBI that Sember had access to a classified asset at the CRPD. (Doc. 14 at ¶ 45.) On March 27, 2014, a teleconference was scheduled to occur between Sember and several BAHES and BAH employees, but was cancelled. (*Id.* at ¶ 47.) Shortly thereafter, Sember, through his counsel, submitted a letter moving his resignation date from April 18, 2014 to March 28, 2014. (*Id.* at ¶ 48.) BAHES records indicate Sember's last day of employment as March 27, 2014. (*Id.* at ¶ 50.)

On March 28, 2014, federal agents, with the assistance of local law enforcement, searched Sember's home in search of the data transferred to his personal hard drive. (*Id.* at ¶ 50.) Six months thereafter, Sember was indicted for theft of government property in violation of 18 U.S.C § 641. (*Id.* at ¶ 52.) At the conclusion of trial, a unanimous jury found Sember not guilty of the alleged offense. (*Id.* at ¶ 63.)

Sember asserts only one cause of action in the Amended Complaint. (*Id.* at ¶ 66.) He alleges that Defendants breached a duty to train him on how to handle, label, and protect the data he created while employed by BAHES. (*Id.*) Sember alleges that, as a consequence of this failure to train, BAHES informed federal authorities that he stole classified information, which led to his indictment for theft of government property. (*Id.*) Sember seeks more than $50,000 in legal fees and compensation for his loss of employment, mental anguish and embarrassment. (*Id.* at ¶ 64.)

## II. LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, courts must construe the complaint in the light most favorable to the plaintiff and accept as true all "well pleaded allegations" in the complaint. *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 845 (6th Cir. 2007). However, a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). The mere presence of an affirmative defense does not render a claim for relief invalid *per se*. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). However, a complaint may be dismissed "if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as the official immunity of the defendant." *Picard Chem. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1115 (W.D. Mich. 1996) (quoting 2A James W. Moore, Moore's Federal Practice, ¶ 12.07[2.5] (2d ed. 1991)).

## III. ANALYSIS

Sember alleges that Defendants breached a duty to train him regarding the proper handling of confidential information, which caused BAHES to report him to the

4

FBI and ultimately led to his indictment for alleged theft of government property. Defendants argue that these allegations fail to state a claim under Ohio law and, even if the allegations could state a claim, Defendants are immune, as government contractors, from any claims based on their reporting of security-related information to the United States government. As discussed below, the Court finds that Defendants are entitled to dismissal of the Amended Complaint on immunity grounds. The Court therefore does not consider Defendants' argument under Ohio state law.

Citing *Becker v. Philco Corp.*, 372 F.2d 771 (4th Cir. 1967), Defendants assert that "absolute immunity protects federal defense contractors, both companies and individuals, from claims originating from security reports they make to federal agencies." (Doc. 16 at 11.) In *Becker*, the Fourth Circuit considered whether the plaintiffs could sue their employer for defaming them in a report made to the United States pursuant to the terms of a defense contract. *Becker*, 372 F.2d at 771. The Fourth Circuit first noted that the contractor was charged with duties and responsibilities similar to those of a federal agency, such as the safekeeping of government secrets, and was obligated to report "not only . . . actual but . . . each suspected compromise of classified information" to the government. *Id.* at 773-74. The Fourth Circuit further observed that, if a federal agency were in the contractor's position, it would be accorded an "unqualified privilege" for the allegedly defamatory communications because they were mandatory and within the scope of the contractor's functions. *Id.* at 774. In addition, the communications did not involve any public disclosure, "but only a confidential transmittal within the internal operations of the Government." *Id.* at 775-76.

5

Since a federal agency could not be liable in such circumstances, the Fourth Circuit reasoned that a libel action also should not lie "against a private party fulfilling its governmentally imposed duty to inform." *Id.* at 776.

The Sixth Circuit has not addressed similar circumstances—or, at least, the parties have not cited and the Court's research has not uncovered any such case. This Court, however, has previously held that a defense contractor was immune from state tort claims "stemming from reporting information to the United States about its employees who hold United States Government security clearances." *Montgomery v. Sanders*, No. 3:07-cv-470, 2008 WL 4546262, at *3-4 (S.D. Ohio Aug. 18, 2008).

In *Montgomery*, the plaintiff, a program manager for a federal defense contractor, alleged that the contractor's Facility Security Officer ("FSO") had filed a series of allegedly false reports about him with federal authorities. *Id.* The reports included claims that plaintiff had classified documents at his home, had brought weapons to work, had stockpiles of weapons and ammunition at his home, and was recently convicted of "reckless operation" of a motor vehicle. *Id.* The contractor terminated plaintiff based on the reports and he was denied access to the Air Force base where he was engaged in a separate business. *Id.*

The plaintiff asserted, among others, claims for defamation, slander and libel per se against the contractor and FSO. *Id.* at *2. The defendants moved to dismiss these claims on the basis that they were immune from liability for claims premised on their reporting of information with national security implications to the United States government. *Id.* at *3. The Court agreed and explained that "this absolute immunity

6

allows defense contractors to alert the United States to potential threats to national security without fear of a lawsuit, which would otherwise encourage self-censorship." *Id.* at *4. Quoting *Gulati v. Zuckerman*, 723 F.Supp. 353 (E.D.Pa.1989), the Court added:

> Contractors have the duty to report all manner of potentially damaging information about their employees to the appropriate federal authorities. They must be able to do this free of the fear of expensive litigation. Self-censorship in adverse information reporting would be extremely detrimental to the federal goal of ferreting out security risks in the defense industry. It is the province of federal security investigators, not of reporting contractors, to sort out valid reports of employee misbehavior from unfounded fictions.

*Id.* at *4 (quoting *Gulati*, 723 F.Supp. at 358).

Here, Defendants argue that, even though Sember dropped the malicious prosecution and defamation claims pled in his original complaint, he still alleges that "he was unfairly prosecuted for theft of government data based on information Defendants provided to the federal government about him." (Doc. 16 at 14 (citing Doc. 14 at ¶ 45).) Defendants reason that, because this sole remaining claim is derivative of their mandatory reporting of security-related information about Sember, they are entitled to absolute immunity—just as the defendants in the *Montgomery* case. (*Id.*)

Defendants' argument is persuasive. As defense contractors to the federal government, Defendants were subject to the requirements of the Department of Defense's ("DoD's") National Industrial Security Program Operating Manual ("NISPOM"). *See* NISPOM, DoD 5220.22-M at § 1-100, available at

7

http://www.dss.mil/documents/odaa/nispom2006-5220.pdf.[2] Specifically, NISPOM § 1-302 provides that "[c]ontractors shall report adverse information coming to their attention concerning any of their cleared employees." *Id.* Thus, Defendants were required to report the adverse information about Sember alleged in the Amended Complaint.

Moreover, as the Court noted in its ruling on Sember's Motion to Remand, Sember does not allege any damages that are not causally linked to Defendants' reporting of information to federal officers. (Doc. at 7-8.) The policy reasons for the immunity granted federal contractors in cases involving defamation claims therefore also apply here. Namely, permitting Sember's claim to go forward could engender self-censorship among federal contractors due to a fear of expensive litigation that "would be extremely detrimental to the federal goal of ferreting out security risks in the defense industry." *Gulati*, 723 F.Supp. at 358; *see also Mangold v. Analytic Svcs. Inc.*, 77 F.3d 1442, 1449 (4th Cir. 1996) (federal contractor is immune from claims for defamation and intentional infliction of emotional distress based on statements it made in response to government investigators during an official investigation).

Sember did not address Defendants' immunity argument in his opposition to the Motion to Dismiss. He therefore neither contested Defendants' reporting obligations nor distinguished the caselaw establishing immunity for federal contractors in similar circumstances. As a result, in accordance with that caselaw, the Court finds that

---

[2] The Court may take judicial notice of the NISPOM, which is a public record, on Defendants' motion to dismiss. *Tellabs, Inc. v. Maker Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Defendants are entitled to immunity from the remaining claim asserted against them in the Amended Complaint.

IV. **CONCLUSION**

Even construing the Amended Complaint in the light most favorable to Sember, he alleges a cause of action premised on Defendants' mandatory reporting of security-related information to the United States government. As discussed above, Defendants are entitled to immunity from state law claims based on such allegations. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 16) the Amended Complaint. This case shall be **TERMINATED** on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, August 3, 2017.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE